Nos. 24-7276, 24-7377

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

STATE OF ALASKA,

*Plaintiff/Appellee/Cross-Appellant*,

v.

NATIONAL MARINE FISHERIES SERVICE,

*Defendant/Appellee*,

and

CENTER FOR BIOLOGICAL DIVERSITY,

*Intervenor-Defendant/Appellant/Cross-Appellee.*

On Appeal from the United States District Court for the District of Alaska
No. 3:23-cv-00032 (Hon. Sharon L. Gleason)

**CENTER FOR BIOLOGICAL DIVERSITY'S RESPONSE TO THE
NATIONAL MARINE FISHERIES SERVICE'S THIRD BRIEF**

| | |
|---|---|
| Kristen Monsell | Marlee Goska |
| Emily Jeffers | Center for Biological Diversity |
| Center for Biological Diversity | P.O. Box 1178 |
| 2100 Franklin St., Suite 375 | Homer, AK 99603 |
| Oakland, CA 94612 | (907) 931-4775 |
| (510) 844-7100 | mgoska@biologicaldiversity.org |
| kmonsell@biologicaldiversity.org | |
| ejeffers@biologicaldiversity.org | |

*Attorneys for Intervenor-Defendant/Appellant/Cross-Appellee
Center for Biological Diversity*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

BACKGROUND .................................................................................................. 2

ARGUMENT ........................................................................................................ 4

    I.    The Court Has Jurisdiction Under the *Alsea* Exceptions ....................... 4

    II.    The Center Has Standing to Pursue This Appeal ................................. 9

CONCLUSION ................................................................................................... 10

CERTIFICATE OF COMPLIANCE ....................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Alsea Valley All. v. Dep't of Com.*,
  358 F.3d 1181 (9th Cir. 2004) .................................................................. 1, 5, 7, 8

*Ariz. Cattle Growers' Ass'n v. Salazar*,
  606 F.3d 1160 (9th Cir. 2009) ................................................................................3

*Cal. Pub. Utils. Comm'n v. Fed. Energy Reg. Comm'n*,
  29 F.4th 454 (9th Cir. 2022) ...................................................................................6

*Chugach Alaska Corp. v. Lujan*,
  915 F.2d 454 (9th Cir. 1990) ...............................................................................5, 7

*Crow Indian Tribe v. U.S. Fish & Wildlife Serv.*,
  965 F.3d 662 (9th Cir. 2020) ........................................................................ 6, 7, 8

*Ctr. for Biological Diversity v. Bureau of Land Mgmt.*,
  69 F.4th 588 (9th Cir. 2023) ...................................................................................9

*Ctr. for Biological Diversity v. Kempthorne*,
  588 F.3d 701 (9th Cir. 2008) ................................................................................10

*Didrickson v. U.S. Dep't of the Interior*,
  982 F.2d 1332 (9th Cir. 1992) ...........................................................................9, 10

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007) ...............................................................................................3

*Pit River Tribe v. U.S. Forest Serv.*,
  615 F.3d 1069 (9th Cir. 2010) ............................................................................4, 9

*United States v. U.S. Bd. of Water Comm'rs*,
  893 F.3d 578 (9th Cir. 2018) ..................................................................................5

**Statutes**

16 U.S.C. § 1533(a)(3)................................................................................................3

16 U.S.C. § 1533(b)(2)............................................................................................2, 3

**INTRODUCTION**

The Court has jurisdiction to hear the Center for Biological Diversity's (Center) appeal of the district court's order vacating critical habitat designations for the Arctic ringed seal (ringed seal) and the Beringia distinct population segment of the bearded seal (bearded seal) that the National Marine Fisheries Service (NMFS) issued under the Endangered Species Act (ESA).

Not only does the district court's vacatur erroneously deprive the seals of legal protections vital to their survival and recovery, but this case fits squarely within the exceptions articulated in *Alsea Valley Alliance v. Department of Commerce*, 358 F.3d 1181 (9th Cir. 2004), for when a vacatur and remand order is considered final as to non-agency parties. This is because, as the agency's opening merits brief repeatedly emphasizes, the district court's decision imposes legal requirements upon NMFS's remand that do not exist in the ESA. As such, review of the district court's fundamental legal errors will, as a practical matter, be entirely foreclosed if the Court dismisses this appeal.

This is not a situation where the district court faulted the agency for, e.g., simply failing to adequately explain its reasoning or not considering relevant science. In those situations, *Alsea* typically precludes an appeal without the agency because the agency can readily address the omissions on remand, and, when it does so, the non-agency party is either not prejudiced at all or can pursue further judicial

1

review.

Rather, here, the district court's order means that NMFS can only issue critical habitat designations after considering entirely new substantive factors and applying a different legal framework than before. Dismissal would foreclose the Center's ability to prevent the agency from doing so, and the agency's new decision would be based on new legal structures the district court imposed that circumscribe how and when the agency can adopt any critical habitat protections. This is therefore a paradigmatic case in which an immediate appeal is warranted.

## BACKGROUND

In 2022, NMFS designated critical habitat for the bearded and ringed seal as required by the ESA. *See* 16 U.S.C. § 1533(b)(2); 2-FedER-025 (bearded seal); 2-FedER-076 (ringed seal). Alaska challenged the designations, alleging they violated the ESA in several ways, and the Center intervened to defend the designations. *See* 1-FedER-003–23. The district court agreed with Alaska in three respects, all of which were based on erroneous interpretations of the ESA. *See id*.

First, the district court held NMFS's designations unlawful for not explaining "why the entirety of the designated areas … are indispensable to the seals' survival and recovery." 1-FedER-010. In doing so, the district court committed a fundamental legal error by conflating the statutory requirement for designating unoccupied habitat with that of occupied habitat, inappropriately

requiring the agency to satisfy the more demanding standard. *See Ariz. Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160, 1163 (9th Cir. 2009) (holding that the ESA "differentiates between 'occupied' and 'unoccupied' areas, imposing a more onerous procedure on the designation of unoccupied areas by requiring the [agency] to make a showing that unoccupied areas are essential for the conservation of the species"); *see also* Ctr. First Br. on Cross-Appeal 21–27, Dkt. No. 23 (discussing the difference).[1]

Second, in holding NMFS's designations unlawful for not considering conservation efforts in foreign nations, 1-FedER-010, the district court read additional requirements into the ESA that do not exist. Nothing in the ESA requires NMFS to consider such efforts before designating critical habitat. *See* 16 U.S.C. § 1533(a)(3), (b)(2). Congress only required NMFS to consider such efforts in deciding whether to list the species in the first place, indicating that it intentionally omitted this requirement from critical habitat designations. *See* Ctr. First Br. 32–37.

Third, in faulting NMFS for not excluding additional areas from the critical habitat designations, 1-FedER-011–12, the district court again ignored the ESA's plain language by requiring a step that the ESA does not, *see Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662–64 (2007) (holding a lower court's reading of the ESA impermissibly "engraft[ed]" additional requirements into the

---

[1] All citations to docket numbers refer to the filings in Case No. 24-7276.

provision at issue). Moreover, the district court's decision on this issue is intertwined with its erroneous legal holding on the first issue in this appeal: the mistaken belief that NMFS had to determine whether all designated areas are "essential to [the ice seals'] conservation," 1-FedER-012, which is not the standard for designating *occupied* critical habitat that applies here. Ctr. First Br. 37–42.

The district court vacated the critical habitat designations in their entirety and remanded the matters "to the agency for further proceedings consistent with [its] Decision and Order." 1-FedER-002, 12. Both NMFS and the Center appealed, explaining in their opening merits briefs how the district court based its decision on fundamental legal errors that impose requirements on the agency's critical habitat designations that do not exist in the statute and are contrary to the ESA's plain language. Ctr. First Br. 18–20; NMFS First Br. on Cross-Appeal 16–20, Dkt. No. 17. Before its third brief on cross-appeal was due (and after the change in administration), NMFS dismissed its appeal.

## ARGUMENT

### I. The Court Has Jurisdiction Under the *Alsea* Exceptions

"*Alsea* did not announce a hard-and-fast rule prohibiting a non-agency litigant from appealing a remand order." *Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1075 (9th Cir. 2010). Rather, this Court court can hear such an appeal without the agency when "(1) the district court conclusively resolves a separable

4

legal issue, (2) the remand order forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding, and (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable." *Alsea*, 358 F.3d at 1184 (citation omitted). "These are not 'strict prerequisites,' but merely 'considerations.'" *United States v. U.S. Bd. of Water Comm'rs*, 893 F.3d 578, 594 (9th Cir. 2018) (citation omitted). This appeal satisfies all three considerations.

First, the district court definitively resolved each of the legal issues in the Center's appeal. *See* 1-FedER-007–10, 11–12; *see also Bd. of Water Comm'rs*, 893 F.3d at 594 (holding the first consideration satisfied where "the district court resolved both questions at issue").

Second, allowing the district court's ruling to stand may result in a wasted proceeding. If the district court's holding on any one of the legal issues raised in the Center's appeal is erroneous, then the remand proceedings will be wasted because NMFS will be required to apply the ESA incorrectly. *See Chugach Alaska Corp. v. Lujan*, 915 F.2d 454, 457 (9th Cir. 1990); *Bd. of Water Comm'rs*, 893 F.3d at 594–95. It is irrelevant that the district court did not direct NMFS to reach a particular outcome. *Contra* NMFS Third Br. on Cross-Appeal 8, Dkt. No. 60. The district court imposed substantive requirements on NMFS's remand that do not exist in the ESA, as NMFS repeatedly recognized in its opening brief. *See, e.g.*, NMFS First Br. 15–16, 18–20. Because "[a]n administrative agency may not

5

deviate from a supervising court's remand order," *Cal. Pub. Utils. Comm'n v. Fed. Energy Reg. Comm'n*, 29 F.4th 454, 462 (9th Cir. 2022) (citation omitted), NMFS must apply the new legal framework the district court held is required before any critical habitat may be designated.

Third, allowing the district court judgment to stand without appellate review would, as a practical matter, foreclose timely review of the three legal issues the Center raises on appeal. This case is therefore like *Crow Indian Tribe v. U.S. Fish and Wildlife Service*, 965 F.3d 662 (9th Cir. 2020). There, the plaintiffs challenged a Fish and Wildlife Service (FWS) rule removing the grizzly bear from the list of species protected under the ESA. *Id.* at 670. The district court held for the plaintiffs and intervenors and the agency appealed. *Id*. In determining it had jurisdiction to hear the intervenors' appeal—which raised an issue the FWS did not pursue—the Court reasoned that the district court (1) "issued a definitive ruling, contrary to the Intervenors' position, concluding that the FWS's failure to include a commitment to recalibration in the 2017 Rule was arbitrary and capricious" and (2) "ordered the FWS to include it in any new rulemaking." *Id*. at 676. As such, appeal was the only meaningful way intervenors' objections would be considered. *Id.*

The same is true here. The district court issued a definitive ruling requiring the agency, as a prerequisite to any critical habitat designation, to (1) determine whether each occupied area is "essential" to the seal's conservation, (2) conduct a

new analysis of any foreign conservation efforts, and (3) decide whether to exclude additional areas as Alaska and others requested. *See* 1-FedER-002, 012. But it is the Center's position that the ESA does not require these prerequisites at all and the district court's remand thus forces legal restrictions on the agency that do not exist in the statute. "An appeal is the only way [these] objections can be considered." *Crow Indian Tribe*, 965 F.3d at 676.

NMFS attempts to distinguish *Crow Indian Tribe* by claiming the district court there "compelled the agency to include a particular substantive provision" in acting on remand. NMFS Third Br. 8. But that is precisely the effect of the district court's decision here. And contrary to NMFS's characterization, the fact that the FWS was a party to the appeal, *id.* at 9, played no role in the Court's holding that it had jurisdiction over the issue raised only by the intervenor. *See Crow Indian Tribe*, 965 F.3d at 676.

None of the cases on which NMFS relies show jurisdiction is lacking here. In *Alsea*, the district court held a rule listing a naturally spawning coho population under the ESA unlawful where the agency "exclude[ed] hatchery coho populations from listing protection even though they [were] determined to be part of the same DPS [distinct population segment] as natural coho populations." 358 F.3d at 1183 (citing district court decision). The district court vacated the listing, remanding to the agency for reconsideration of its salmon categorizations in light of the best

available science. *Id.* In holding it lacked jurisdiction where an environmental group appealed but NMFS did not, this Court noted that the agency's decision following remand could take one of several "[p]ermutations favorable to the [organization]" while not running afoul of the district court's decision, including, "defin[ing] hatchery coho as a separate DPS from naturally spawned coho" or listing only the naturally spawning population upon the agency "reformulat[ing] its criteria for determining which groups of salmon constitute DPSs." *Id*. at 1185. As such, the Court determined that the organization "will likely enjoy the opportunity to influence the ultimate shape of the [NMFS] rule during the public participation phase of the rulemaking process the [agency] intends to undertake." *Id.*[2]

Here, the Center cannot "influence the ultimate shape" of new designations with regard to the issues on appeal. *See id.* The district court's order requiring NMFS to consider three substantive factors on remand leaves no opportunity for the Center to convince NMFS that the ESA does not impose these requirements. *See Crow Indian Tribe*, 965 F.3d at 670 (distinguishing *Alsea* where "the issue the Intervenors raise has been conclusively determined by the district court and cannot be taken into account in the FWS proceedings upon remand"). And once NMFS issues new critical habitat decisions, the district court's rulings on the legal

---

[2] In *Alsea*, the agency had also "unveiled a four-step 'Action Plan'" to address the district court's decision, including a public rulemaking process. 358 F.3d at 1183–84. NMFS has made no such commitments here.

8

sufficiency of the 2022 critical habitat designations with regard to the three statutory interpretation issues will be moot. *Contra* NMFS Third Br. 9–10.

*Pit River Tribe* is also inapplicable. That case dealt with an agency's failure to conduct review under the National Environmental Policy Act prior to taking various actions regarding geothermal power leasing and development. 615 F.3d at 1073. On remand, the agency retained wide discretion in determining whether and how to re-issue the originally challenged actions, and it was on this basis that the Court found it lacked jurisdiction under *Alsea*. *See id.* at 1074, 1076.

Here, conversely, the district court ordered NMFS to adopt a different legal framework before designating any critical habitat, and the agency has no discretion to decline to do so. *See* 1-FedER-002 (district court judgment remanding the matter to the agency "for further proceedings consistent with the [c]ourt's Decision and Order"); 1-FedER-012 (similar). *Center for Biological Diversity v. Bureau of Land Management*—which also dealt with an agency's failure to prepare any review under the National Environmental Policy Act, 69 F.4th 588, 591, 595 (9th Cir. 2023)—is inapt for the same reason. *Contra* NMFS Third Br. 9.

## II. The Center Has Standing to Pursue This Appeal

The Center has standing to pursue this appeal. *See Didrickson v. U.S. Dep't of the Interior*, 982 F.2d 1332, 1338 (9th Cir. 1992). The declarations the Center submitted below in seeking to intervene, and an additional declaration filed

9

herewith, demonstrate that its members have concrete and particularized interests in bearded and ringed seals, and that the district court's order adversely affects those interests. *See* CBD_FER-009–11, Wolf Decl. ¶¶ 18–21 (describing the Center's members' interests in the seals and how those interests would be harmed by the removal of their critical habitat protections); CBD_FER-014–15, 17–19, Steiner Decl. ¶¶ 9–10, 16, 18, 20 (Center member describing his aesthetic interests in bearded and ringed seals, prior trips where he observed the seals, plans to return to the Chukchi and Beaufort Sea coasts to observe the seals, and how the removal of the seals' critical habitat protections harms his interests); CBD_FER-021–23, 25–26, Ahmasuk Decl. ¶¶ 4, 7, 13–15 (Center member describing his cultural and subsistence interests in bearded and ringed seals, and the importance of the critical habitat designations in protecting those interests).³ Nothing more is required. *See Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701, 707–08 (9th Cir. 2008) (holding the plaintiffs had standing to challenge a rule allowing take of polar bears and walrus where their "members allege that they have viewed polar bears and walrus in the Beaufort Sea region, enjoy doing so, and have plans to return").

## CONCLUSION

The Court has jurisdiction to hear the Center's appeal.

---

³ Supplemental declarations are appropriate to establish the Center's standing on appeal because an intervenor-defendant is "not required, under Ninth Circuit law, to establish standing in order to intervene." *Didrickson*, 982 F.2d at 1340.

10

Respectfully submitted on August 21, 2025,

                          <u>/s/ *Kristen Monsell*</u>

                          Kristen Monsell
                          Emily Jeffers
                          Center for Biological Diversity
                          2100 Franklin St., Suite 375
                          Oakland, CA 94612
                          (510) 844-7100
                          kmonsell@biologicaldiversity.org
                          ejeffers@biologicaldiversity.org

                          Marlee Goska
                          Center for Biological Diversity
                          P.O. Box 1178
                          Homer, AK 99603
                          (907) 931-4775
                          mgoska@biologicaldiversity.org

                          *Attorneys for Intervenor-*
                          *Defendant/Appellant/Cross-Appellee*
                          *Center for Biological Diversity*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 27(d) and 32(a)(5) and (6) because it has been prepared in 14-point Time New Roman, a proportionally spaced font.

I further certify that this motion complies with the page limit issued by the Court in its Order of July 28, 2025, Dkt No. 59, because it contains 10 pages, excluding the parts of the brief exempted under Fed. R. App. P. 32(f).

Dated: August 21, 2025 /s/ *Kristen Monsell*
Kristen Monsell