**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| STATE OF ALASKA,<br><br>*Plaintiff - Appellant*,<br><br>v.<br><br>NATIONAL MARINE FISHERIES SERVICE,<br><br>*Defendant - Appellee*,<br><br>CENTER FOR BIOLOGICAL DIVERSITY,<br><br>*Intervenor-Defendant - Appellee*. | Nos. 24-7276<br><br>D.C. No. 3:23-cv-00032-SLG<br><br>OPINION |
| STATE OF ALASKA,<br><br>*Plaintiff - Appellee*,<br><br>v.<br><br>NATIONAL MARINE FISHERIES SERVICE, | No. 24-7377<br><br>D.C. No. 3:23-cv-00032-SLG |

*Defendant - Appellee*,

CENTER FOR BIOLOGICAL DIVERSITY,

*Intervenor-Defendant - Appellant*.

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, Chief District Judge, Presiding

Argued and Submitted October 9, 2025
Honolulu, Hawaii

Before: M. Margaret McKeown, Michelle T. Friedland, and Jennifer Sung, Circuit Judges.

Opinion by Judge McKeown

## SUMMARY*

### Environmental Law

The panel affirmed in part and reversed in part the district court's judgment in an action brought by the State of Alaska challenging the National Marine Fisheries Service's

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

("NMFS's") issuance of critical habitat designations for two species of Arctic seal in two final rules in 2022.

The district court held that the critical habitat designations were unlawful, and entered an order vacating the two final rules and remanding the matter to NMFS. The Center for Biological Diversity intervened as a defendant and appeals from that order.

The panel held that it had jurisdiction over the Center's appeal. The district court's remand order was final because the remand order resolved discrete legal issues; the district court's conclusions, if erroneous, could result in a "wasted proceeding"; and the Center may not obtain a favorable result on remand.

On the merits, the panel reversed the district court's ruling that the critical habitat designations were unlawful because (1) NMFS's designations were consistent with the Endangered Species Act's ("ESA's") definition of occupied critical habitat; (2) NMFS was not required to account for foreign nation conservation efforts or the existence of foreign habitat in making the designations; and (3) NMFS acted within its discretion, and consistently with the ESA, when it declined to consider excluding certain coastal areas for which Alaska and the North Slope Borough requested exclusions.

On cross-appeal, the panel rejected Alaska's contention that the designations must be set aside because they failed to comply with the ESA's "prudency" requirement. Although the ESA directs NMFS to designate critical habitat to the maximum extent prudent, that language creates a narrow statutory exception to what is otherwise an obligation to designate critical habitat. NMFS adequately explained why the exception was inapplicable to the seals.

Accordingly, the panel reversed the district court's rulings that the designations were unlawful and affirmed the district court's rulings as to the ESA's "prudency" requirement. The panel reinstated the critical habitat designation for each seal species and remanded with instructions to enter judgment in favor of the Center and NMFS.

---

## COUNSEL

Norman D. James (argued), Dorsey & Whitney LLP, Phoenix, Arizona; Ronald W. Opsahl, Senior Assistant Attorney General; Treg Taylor, Alaska Attorney General; Office of the Alaska Attorney General, Anchorage, Alaska; Tyler Carlton, Fennemore Craig PC, Phoenix, Arizona; for Plaintiff-Appellant.

Jacob D. Ecker (argued), John E. Arbab, Joan M. Pepin, Astrid S. Cevallos, and Robert T. Lundman, Attorneys, Environment & Natural Resources Division, Appellate Section; Robert N. Stander, Deputy Assistant Attorney General; Adam R.F. Gustafson, Acting Assistant Attorney General; Todd Kim, Assistant Attorney General; United States Department of Justice, Washington, D.C.; Joshua Fortenbery, Attorney, National Oceanic and Atmospheric Administration, Washington, D.C.; for Defendant-Appellee.

Kristen Monsell (argued) and Emily S. Jeffers, Center for Biological Diversity, Oakland, California; Marlee Goska, Center for Biological Diversity, Homer, Alaska; for Intervenor-Defendant-Appellee.

## OPINION

McKEOWN, Circuit Judge:

This appeal marks the culmination of the National Marine Fisheries Service's ("NMFS's") decade-long efforts to conserve two species of Arctic seal. The agency's efforts began in 2012 when it listed a subpopulation of the Pacific bearded seal and the Arctic subspecies of the ringed seal as "threatened" under the Endangered Species Act. 77 Fed. Reg. 76706 (Dec. 28, 2012); 77 Fed. Reg. 76740 (Dec. 28, 2012). Those decisions triggered NMFS's statutory obligation to designate "critical habitat" for those seal species, defined as the specific areas occupied by the seals that contain "physical or biological features" essential to the seal species' conservation. 16 U.S.C. § 1533(a)(3)(A)(i); *id.* § 1532(5)(A)(i). NMFS completed the process by issuing critical habitat designations in two final rules in 2022. 87 Fed. Reg. 19180 (Apr. 1, 2022); 87 Fed. Reg. 19232 (Apr. 1, 2022).

The State of Alaska ("Alaska") opposed those efforts at every turn. Alaska first challenged NMFS's 2012 decision to list the seal species as threatened. And Alaska now contests the agency's critical habitat designations—which largely encompass waters off Alaska's north coast. In Alaska's view, the designations are too broad, and their benefits too slight, to survive judicial review under the Administrative Procedure Act ("APA"). The district court agreed in large part and held that the designations were unlawful. *Alaska v. Nat'l Marine Fisheries Serv.*, No. 3:23-cv-00032-SLG, 2024 WL 4298114 (D. Alaska Sept. 26, 2024). Accordingly, the court entered an order vacating the rules and remanding the matter to NMFS. *Id.* at *15–16. The Center for Biological

Diversity (the "Center") intervened as a defendant and now appeals from that order.

We conclude that we have jurisdiction over the Center's appeal, and we affirm in part and reverse in part with instructions to enter judgment in favor of the Center and NMFS.

## Background

The Endangered Species Act ("ESA"), adopted in 1973, 87 Stat. 884, as amended, 16 U.S.C. § 1531 *et seq.*, is intended to "conserve endangered and threatened species and their habitats." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 651 (2007). The Secretaries of Commerce and the Interior share responsibility for implementing the Act through NMFS and the Fish and Wildlife Service ("FWS"). *Id.* Under the ESA, the agencies' core responsibility is to determine whether species within their respective jurisdictions are "endangered" or "threatened." 16 U.S.C. § 1533(a)(1). The seal species fall within NMFS's jurisdiction, so we refer only to that agency here.

Once a species is listed "as endangered or threatened," NMFS must "concurrently" designate that species' "critical habitat." *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 67 F.4th 1027, 1031 (9th Cir. 2023) (quoting 16 U.S.C. § 1533(a)(3)(A)(i)). The ESA defines "critical habitat" as:

> (i) the specific areas within the geographical area occupied by the species . . . on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special

Case: 24-7276, 03/25/2026, DktEntry: 82.1, Page 7 of 30



> management considerations or protection; and
>
> (ii) specific areas outside the geographical area occupied by the species . . . upon a determination . . . that such areas are essential for the conservation of the species.

16 U.S.C. § 1532(5)(A). Before designating critical habitat, NMFS must consider the "economic," "national security," and "other relevant impact[s]," of the proposed designation. *Id.* § 1533(b)(2). And NMFS "may exclude any area from critical habitat" if the agency concludes that "the benefits of such exclusion outweigh the benefits" of designation. *Id.* The primary consequence of designation is that federal agencies must consult with NMFS about whether their actions will "result in the destruction or adverse modification" of the habitat (often called a "Section 7 consultation"). *Id.* § 1536(a)(2).

In 2012, NMFS listed two species of Arctic seal as "threatened": the ringed seal and the bearded seal. *See* Threatened Status for Arctic, Okhotsk, and Baltic Subspecies of the Ringed Seal and Endangered Status for the Ladoga Subspecies of the Ringed Seal, 77 Fed Reg. 76706 (Dec. 28, 2012); Threatened Status for Beringia and Okhotsk Distinct Population Segments of the Erignathus barbatus nauticus Subspecies of the Bearded Seal, 77 Fed Reg. 76740 (Dec. 28, 2012). The listing triggered NMFS's obligation to designate critical habitat for those species. 16 U.S.C. § 1533(a)(3)(A)(i). Litigation over the threatened-species listings concluded in 2017 after our court upheld the listings, but by 2019, NMFS still had not designated critical habitat for either seal. *See* Endangered and Threatened Species; Designation of Critical Habitat for the Beringia District

Population Segment of the Bearded Seal, 87 Fed. Reg. 19180, 19180 (Apr. 1, 2022); Endangered and Threatened Species; Designation of Critical Habitat for the Arctic Subspecies of the Ringed Seal, 87 Fed. Reg. 19232, 19232 (Apr. 1, 2022). That prompted the Center to file another lawsuit, which, in turn, spurred NMFS to issue the critical habitat designations in two final rules in 2022 pursuant to the parties' settlement. 87 Fed. Reg. at 19180; *id.* at 19232. Those rules identified three physical features essential to the conservation of each seal species, including sea ice habitat for whelping and molting and areas containing primary prey resources. 87 Fed. Reg. at 19229; *id.* at 19286. NMFS designated for each species "a single specific area" off Alaska's north coast that contained "all three of the identified essential features." 87 Fed. Reg. at 19189; *id.* at 19241. The particulars of each designated area differ, but nothing in this appeal turns on those differences, so we analyze them together.

The designated areas appear below, with the bearded seal's critical habitat on the left and the ringed seal's critical habitat on the right:






87 Fed. Reg. at 19229 (bearded seal); *id.* at 19286 (ringed seal). As part of that process, NMFS prepared extensive Regulatory Impact Reviews for each seal, which assessed the economic, national security, and other relevant impacts of the proposed designations, as well as their benefits. Upon weighing the costs and benefits, NMFS exercised its discretion under the statute to exclude from the designations a portion of the Beaufort Sea where the Navy conducts training activities. 87 Fed. Reg. at 19194–95; *id.* at 19249–19250, 19275–77; *see* 16 U.S.C. § 1533(b)(2). But NMFS declined to exclude other areas—including a ten-mile buffer zone proposed by the North Slope Borough and a twenty-mile buffer zone proposed by Alaska—because its analysis did not indicate that "significant economic impacts" would result from those areas' inclusion. 87 Fed. Reg. at 19220; *id.* at 19278.

Alaska challenged the rules under the ESA and the APA, and the Center intervened as a defendant. The district court granted summary judgment to Alaska, agreeing with its contention that the designations violated the ESA's terms as well as the statute's reasoned decision-making requirement. The district court interpreted the ESA as requiring NMFS to find that the entire designated area of occupied critical habitat "*itself* is essential to the conservation of the species"—not just that the area contains "essential features." *Alaska*, 2024 WL 4298114, at *3–4, *7 (citation modified). The court faulted NMFS for failing to specifically make that finding, and relatedly, for failing to explain "why the entirety of each designated area is necessary to the seals' survival" and "why a smaller area" would not suffice. *Id.* at *9. The court found that NMFS's designation was arbitrary and capricious because the agency failed to account for foreign nation conservation efforts and the existence of foreign

habitat. *Id*. at *10–11. And it concluded that NMFS abused its discretion in declining to consider excluding the coastal buffer zones for oil and gas activities, as requested by the North Slope Borough and Alaska. *Id*. at *13–15. The district court upheld the rules in other respects; for instance, it rejected Alaska's argument that NMFS had to find expressly that designation was "prudent." *Id*. at *13. Accordingly, the district court vacated and remanded the matter to NMFS. *Id*. at *15–16. NMFS and the Center appealed, and Alaska filed a cross-appeal with respect to the prudency issue.

In the midst of briefing before this court, NMFS moved to voluntarily dismiss its appeal. It concurrently moved to dismiss the Center's appeal, arguing that we lack jurisdiction over a non-agency litigant's appeal of a district court's remand order. We granted NMFS's motion to voluntarily dismiss but denied its motion to dismiss the Center's appeal without prejudice and permitted the parties to further brief the jurisdictional issue.

## Analysis

### I. Jurisdiction

Federal courts are, of course, "courts of limited jurisdiction." *Badgerow v. Walters*, 596 U.S. 1, 7 (2022). Before turning to the merits, we must therefore "ensure our own jurisdiction." *McNeil v. Gittere*, 150 F.4th 1205, 1207 (9th Cir. 2025) (quoting *United States v. Ceja-Prado*, 333 F.3d 1046, 1049 (9th Cir. 2003)).

By statute, we have jurisdiction over appeals from a district court's "final decisions." 28 U.S.C. § 1291. Remand orders are generally "not considered final" for purposes of appellate jurisdiction. *Chugach Alaska Corp. v. Lujan*, 915 F.2d 454, 457 (9th Cir. 1990). But that principle is not

inviolate. In determining whether a remand order is final, we generally assess three "considerations": (1) whether the order "conclusively resolves a separable legal issue," (2) whether application of the "potentially erroneous" ruling "may result in a wasted proceeding" on remand before the agency, and (3) whether the lack of an immediate appeal would foreclose review "as a practical matter." *United States v. U.S. Bd. of Water Comm'rs*, 893 F.3d 578, 594 (9th Cir. 2018) (first quoting *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1175 (9th Cir. 2011); and then quoting *Collord v. U.S. Dep't of Interior*, 154 F.3d 933, 935 (9th Cir. 1998)). While each consideration bears weight, none is a "strict prerequisite[]" to our jurisdiction. *Sierra Forest*, 646 F.3d at 1175.

"Beyond" those considerations, our cases recognize that "judicial economy" is relevant to the analysis as well. *Water Comm'rs*, 893 F.3d at 595. Just as we seek to avoid inflicting a "wasted proceeding" on the agency, we likewise seek to avoid a wasted appeal. *Id.* Thus, a remand order is unlikely to be final where "any decision by us could prove entirely unnecessary" because the party seeking review could instead obtain "all the relief it seeks" in remand proceedings before the agency. *Alsea Valley All. v. Dep't of Com.*, 358 F.3d 1181, 1185 (9th Cir. 2004). By contrast, a remand order is more likely to be final and appealable where the party would be unable to obtain a "favorable" outcome in the remand proceedings. *Id.*; *see Crow Indian Tribe v. United States*, 965 F.3d 662, 676 (9th Cir. 2020); *Water Comm'rs*, 893 F.3d at 595 ("[R]emand orders are sufficiently 'final' under § 1291, where the relief sought by appellants cannot possibly be achieved through the district court's directions."). In the latter circumstance, there is little or no risk that our deciding the issue will waste judicial resources.

Applying the foregoing considerations, we conclude that the remand order here is final, providing us with jurisdiction over the Center's appeal. The district court's order satisfies the first two conditions because the order contains several distinct legal rulings, the application of which would be entirely unnecessary if the court was incorrect. What is more, as explained further below, it is unlikely that the Center would be able to obtain a favorable outcome in the remand proceedings ordered by the district court. And although review of any post-remand rule would not be foreclosed, that consideration carries little practical weight compared to the others.

To understand how we reach that result, it is useful to survey our decisions in this space.

On the one hand, we have held that the finality considerations favor exercising jurisdiction over appeals by agencies from remand orders setting out a governing legal standard. Starting with *Stone v. Heckler*, we have explained that allowing appeals of such orders permits resolution of discrete "questions of law" that will guide the proceedings on remand (the first consideration), 722 F.2d 464, 467 (9th Cir. 1983) (citation omitted); that application of the incorrect standard would "result in a totally wasted proceeding below" (the second consideration), *id.*; and that the lack of an immediate appeal may foreclose review because an agency cannot challenge its own post-remand rule (the third consideration), *see Rendleman v. Shalala*, 21 F.3d 957, 959 n.1 (9th Cir. 1994). Nor can an agency obtain a "favorable" outcome on remand—as the party on the losing end of the district court's decision, the agency will be forced to adhere to a legal standard with which it disagrees. *See Water Comm'rs*, 893 F.3d at 595. Thus, when the agency is seeking to appeal a remand order, the considerations

weigh in favor of finality. *See, e.g.*, *Kaweah Delta Health Care Dist. v. Becerra*, 123 F.4th 939, 947–48 (9th Cir. 2024).

On the other hand, we have recognized that the finality considerations may shake out differently where the party seeking review is not an agency litigant. In *Alsea Valley Alliance v. Department of Commerce*, for example, we considered an appeal by an organization that intervened in defense of an NMFS threatened-species listing. 358 F.3d 1181 (9th Cir. 2004). After concluding that the listing did not comply with the ESA, the district court vacated and remanded the rule. *Id.* at 1183. Seeking to defend the agency's listing decision, the organization appealed the district court's order, but the agency did not appeal that remand order. *Id.* at 1184. In determining whether we had jurisdiction over the organization's appeal, we focused on the third finality consideration and found it dispositive. We observed that future judicial review was not foreclosed because the organization could "bring suit" to challenge any unlawful post-remand rule. *Id.* at 1184–85. Critically, however, we also emphasized that the organization could obtain "all the relief it seeks" in the remand proceedings. *Id.* at 1185. NMFS could revise its regulations and list the species as threatened again, thereby reaching the same result as before. *Id.* Indeed, we noted that numerous "[p]ermutations favorable to [the organization] remain." *Id.* With those "contingencies" present, we held that the remand order was "not 'final.'" *Id*.

Since *Alsea*, we have continued to hold that remand orders are not final as to non-agency parties that may obtain "all the relief [they] seek[]" on remand. *Id.* at 1185; *Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1076 (9th Cir. 2010) (tribe that challenged lease extensions could obtain

decision "declin[ing] to extend [the] leases" on remand); *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 69 F.4th 588, 595 (9th Cir. 2023) (organizations defending rights of way could obtain "reissue[ance] [of] the rights-of-way on remand"). Those decisions reflect our strong bias against hearing an appeal where "any decision by us could prove entirely unnecessary." *Pit River Tribe*, 615 F.3d at 1076 (quoting *Alsea*, 358 F.3d at 1185).

But applying that same logic, we have squarely held that non-agency litigants can appeal remand orders that address discrete legal issues where the "relief sought could not be achieved through the action the district court directed the agency to undertake." *Sierra Forest*, 646 F.3d at 1175. In *Sierra Forest*, the district court remanded and directed the Forest Service to fix one aspect of an environmental impact statement, but the court rejected the non-agency plaintiff's argument that the statement was unlawful in other respects. *Id*. at 1174–75. Distinguishing *Alsea*, we explained that the remand would be effectively meaningless for the non-agency plaintiff. We reasoned that the district court had rejected the plaintiff's challenges, making it unlikely (if not impossible) for the plaintiff to obtain on remand all the relief it was seeking. *Id*. at 1175–76. The "inefficiency" of dismissing the plaintiff's appeal thus weighed in favor of finality, even though "review would not be foreclosed" post-remand. *Id*. at 1176.

We reached a similar result in *Crow Indian Tribe v. United States*, 965 F.3d 662 (9th Cir. 2020). That case involved an intervenor's appeal from a remand order directing FWS to include a "commitment" to recalibrate a species' population in a revised listing. *Id*. at 676. Again distinguishing *Alsea*, we explained that the order was final because it contained "a definitive ruling, contrary to the

[appellant's] position," that required the agency to include the commitment "in any new rulemaking." *Id.*[1] In similar circumstances, we have emphasized that "'meaningless remand[s]' are anathema to judicial economy" and support appellate jurisdiction. *Water Comm'rs*, 893 F.3d at 595 (alteration in original) (quoting *Skagit Cnty. Pub. Hosp. Dist. No. 2 v. Shalala*, 80 F.3d 379, 384 (9th Cir. 1996)).

Those principles support jurisdiction here. To begin, the district court definitively resolved separable legal issues, including whether the ESA requires a finding that a designated area of occupied critical habitat is "essential" and whether the ESA allows the agency to make such a finding where the designation encompasses "nearly all" of a species' occupied habitat, *Alaska*, 2024 WL 4298114, at *10; whether the ESA required the agency to "consider any foreign nation efforts to conserve the seals," *id.* at *11; and whether NMFS had to "consider exclusion[s]" proposed by the North Slope Borough and Alaska, *id.* at *15. Moreover, the district court's conclusions, if erroneous, would result in a "wasted proceeding." *Chugach*, 915 F.2d at 457. Invoking that principle here, if the Center prevails on the merits, we would have to direct judgment in favor of the Center and NMFS, which would result in no remand at all.

We also harbor serious doubts about whether the Center could obtain a "favorable" result on remand. *Contra Alsea*, 358 F.3d at 1185 ("Permutations favorable to the

[1] *Crow Indian* also involved an appeal from the agency, but the intervenors were the only parties that appealed this aspect of the remand order. 965 F.3d at 675. While an agency's appeal would usually render a remand order "final for both parties[]," *Kaweah*, 123 F.4th at 948, *Crow Indian* required us to separately address our jurisdiction to hear the issue appealed solely by the non-agency litigant.

[intervenor] remain."). Indeed, the district court's opinion suggests that NMFS *cannot* reissue the same critical habitat designations. The court held the designations unlawful because, on its interpretation of the ESA, the statute does not "permit the Service to designate nearly all of the seals' occupied habitat . . . as indispensable"—something the court believed that NMFS did here. *Alaska*, 2024 WL 4298114, at *10.[2] At oral argument, counsel for the government acknowledged that NMFS could conclude during a remand that this language prevents the agency from reaching the same result as before. The court also found that NMFS failed to consider factors that may favor a narrower designation, including "foreign nation efforts to conserve the seals," *id.* at *11, and certain proposed exclusions, *id.* at *15. In other words, there is a significant risk that remand to NMFS would be akin to "a party with no cake" for the Center—in effect, meaningless. *Sierra Forest*, 646 F.3d at 1175 (quoting *Skagit Cnty.*, 80 F.3d at 384). And by the same token, there is minimal risk that our decision on the merits of the remand order "could prove entirely unnecessary." *Alsea*, 358 F.3d at 1185. Those circumstances render this case distinguishable from *Alsea* and weigh heavily in favor of our jurisdiction.

---

[2] The district court's language is dispositive of the government's alternative argument that we lack jurisdiction because NMFS would not have to "apply" the district court's rule on remand. *See Collord*, 154 F.3d at 935. It goes without saying that agencies "may not deviate from a supervising court's remand order." *California Pub. Utilities Comm'n v. FERC*, 29 F.4th 454, 462 (9th Cir. 2022) (quoting *Olivas-Motta v. Whitaker*, 910 F.3d 1271, 1280 (9th Cir. 2018)). Failure to apply the court's directive about what the law is and which factors the agency must consider would be "legal error." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).

The government resists that conclusion because, as in *Alsea*, the Center could still challenge an adverse rule post-remand. Although that is theoretically possible, that possibility does not otherwise outweigh the inefficiencies that would result from a meaningless remand. *Water Comm'rs*, 893 F.3d at 594. Even setting that aside, however, compared to *Alsea*, NMFS's promise of future review here rings hollow. *See* 358 F.3d at 1184. It already took NMFS several years beyond its statutory deadline to finalize the designations currently on appeal—and even that action was taken pursuant to NMFS's stipulated settlement with the Center in an earlier lawsuit. 87 Fed. Reg. at 19180; *id.* at 19232. Unlike *Alsea*, where NMFS had released an "Action Plan" for the remand proceedings, 358 F.3d at 1183, NMFS here admitted at oral argument that it has only begun "thinking" about remand, with no sense of when, if ever, it would issue revised designations. And regardless, the "unavailab[ility]" of review is not a "prerequisite[]" of our jurisdiction. *Sierra Forest*, 646 F.3d at 1175.

We thus conclude that the remand order is final as to the Center and that we have jurisdiction under 28 U.S.C. § 1291.

## II. Challenge to Merits of Designations

On the merits, the Center seeks reversal of the district court's summary judgment order. Underlying that order are several of Alaska's challenges to the designation, which it reasserts on appeal. To begin, Alaska contends that NMFS failed to explain why each designated area is essential to the survival of the seal species. Alaska also argues that the agency failed to address certain factors regarding the designations' scope, including foreign nation conservation efforts, foreign habitat, and potential exclusions. Finally, Alaska claims that NMFS fell short in its explanation for

why each designation was "prudent." The district court granted summary judgment to Alaska but rejected its argument about NMFS's prudency rationale. In its cross-appeal, Alaska argues that the designations are unlawful for the additional reason that NMFS failed to adequately explain why it was "prudent" to designate critical habitat for the seals.

We review de novo a district court's summary judgment decision. *Siino v. Foresters Life Ins. & Annuity Co.*, 133 F.4th 936, 943 (9th Cir. 2025). Under the APA, we may set aside critical habitat designations only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 141 F.4th 976, 993 (9th Cir. 2025) (quoting 5 U.S.C. § 706(2)(A)).[3] In that review, we exercise our "independent judgment" about questions of statutory interpretation. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 406 (2024). But "when an agency exercises discretion granted by a statute," we ask only "whether the agency action was reasonable and reasonably explained." *Seven*

[3] Alaska filed suit under both the APA and the ESA, but "the APA by its terms independently authorizes review only when 'there is no other adequate remedy in a court.'" *Bennett v. Spear*, 520 U.S. 154, 161–62 (1997) (quoting 5 U.S.C. § 704). Alaska's "[APA] cause of action is precluded because it is identical in all relevant respects to the ESA cause of action, which provides [Alaska] with an 'adequate remedy.'" *Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne*, 531 F.3d 792, 810 (9th Cir. 2008). Although the APA claim is precluded, we nonetheless review "[a]n agency's compliance with the ESA . . . under the Administrative Procedure Act" because the ESA does not provide a standard of review. *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (en banc).

Case: 24-7276, 03/25/2026, DktEntry: 82.1, Page 19 of 30



*Cnty. Infrastructure Coal. v. Eagle County*, 605 U.S. 168, 179–80 (2025).

**A. "Occupied Critical Habitat" Designations**

The Center contends that NMFS's designations were consistent with the ESA's definition of occupied critical habitat. On the Center's view, to designate occupied critical habitat, the agency is only required to find that the occupied areas "include 'physical or biological features' that are 'essential to the conservation of the species.'" The Center maintains that the ESA does not separately require the agency to find that the entire designated area is itself "essential" to the species, nor does the statute require an explanation of why a smaller area would not suffice. We agree.

The plain text of the ESA provides ample support for the Center's interpretation. The statute defines "critical habitat" to include the "specific areas," occupied by a species, "on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations." 16 U.S.C. § 1532(5)(A)(i). That language is straightforward: "all that [the ESA] requires" is for NMFS to identify "physical or biological features" that meet those two criteria. *Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*, 616 F.3d 983, 989 (9th Cir. 2010). Once NMFS identifies such features within a threatened species' occupied range, the agency generally must designate the areas containing those features "as critical habitat." *Alaska Oil & Gas Ass'n v. Jewell*, 815 F.3d 544, 555 (9th Cir. 2016).

Alaska's interpretation, by contrast, would require us to take the key statutory wording out of context. Alaska would read the words "critical," "specific area," and "essential" to

mean that the statute also requires the agency to find that "the entire area is indispensable to the survival and recovery of the species" and requires it to explain why a smaller protected area would be insufficient. But "critical" is part of the statutorily defined term "critical habitat." 16 U.S.C. § 1532(5)(A). Whatever that adjective might mean in isolation, "[s]tatutory definitions control the meaning of statutory words." *Burgess v. United States*, 553 U.S. 124, 129 (2008) (quoting *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949)).

The "critical habitat" definition refutes Alaska's argument that the word "essential" requires a separate determination about a "specific area[']s" conservation value. The adjective "essential" modifies "physical or biological features" that the "specific areas" *contain*; it does not modify the "specific areas" themselves. 16 U.S.C. § 1532(5)(A)(i). We would "stretch the modifier too far" by applying "essential" to the latter, "disconnected phrase." *See Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 440 (2018) (citation modified). Accordingly, NMFS complied with the ESA by identifying essential physical and biological features and designating a "single specific area" that contains all of those features. 87 Fed. Reg. at 19189; *id.* at 19241.

Adjacent statutory provisions confirm this understanding. In contrast to the standard for *occupied* critical habitat at issue here, the neighboring standard for *unoccupied* critical habitat expressly requires a determination that designated areas are themselves "essential for the conservation of the species." *Compare* 16 U.S.C. § 1532(5)(A)(i), *with id.* § 1532(5)(A)(ii). Where, as here, "Congress includes particular language in one section of a statute but omits it from a neighbor, we normally

understand that difference in language to convey a difference in meaning." *Bittner v. United States*, 598 U.S. 85, 94 (2023). Indeed, we have previously explained that the unoccupied-habitat standard creates a "more onerous procedure" precisely because it requires that additional "showing." *Ariz. Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160, 1163 (9th Cir. 2010).[4] The converse is also true. The occupied-habitat standard is less onerous because NMFS need only show the "presence of pertinent biological features." *Ctr. for Biological Diversity*, 67 F.4th at 1044 (citation omitted).

Alaska points to decisions of the Supreme Court and our court stating that critical habitat only includes "areas that are *indispensable* to the conservation of the endangered species." *Id*. at 1037 (quoting *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 20 (2018)). That description is correct at a high level, but those cases do not address—much less apply—the standard Alaska seeks to impose. The relevant portion of *Weyerhaeuser* addresses what makes an area "habitat" for the species. 586 U.S. at 20. And *Center for Biological Diversity* concerned the definition of "essential," not what "essential" modifies in context. 67 F.4th at 1036–37. Neither case suggests that, for *occupied* habitat to be indispensable to conservation, NMFS must find something other than what the ESA calls for expressly. The text, after all, "tells us what makes habitat 'critical.'" *Weyerhaeuser*, 586 U.S. at 20. The fact that an area contains biological

[4] The same distinction defeats Alaska's argument that NMFS acted contrary to operative regulations. A regulatory provision requires NMFS to make "a determination" that areas it designates are "essential for the conservation of the species." 50 C.F.R. § 424.12(b)(2). But that provision only applies to habitat designations "outside the geographical area occupied by the species," i.e., unoccupied habitat. *Id*.

Case: 24-7276, 03/25/2026, DktEntry: 82.1, Page 22 of 30



features "essential to . . . conservation" is entirely consistent with the area being "indispensable." *See* 16 U.S.C. § 1532(5)(A).

Alaska also urges that the designations—which cover nearly 160 million acres—are simply too vast to constitute a "specific area" within the meaning of the ESA. To put that number into perspective, Alaska and its surrounding waters cover nearly half a *billion* acres—so even a small subset of the state may seem large in the abstract. U.S. Census Bureau, *State Area Measurements and Internal Point Coordinates* (2010) https://www.census.gov/geographies/reference-files/2010/geo/state-area.html [https://perma.cc/7PME-BD5K]. Regardless, Alaska misreads the statute. The term "specific area" does not provide any inherent limitation on the size of a designation. And although the ESA provides that critical habitat "shall not include the entire geographical area which *can be* occupied by the threatened or endangered species," 16 U.S.C. § 1532(5)(C) (emphasis added), NMFS did not make such a designation here, so that limitation is inapplicable. *See* 87 Fed. Reg. at 19206; *id.* at 19261 (designating only "subset[s] of the habitat occupied and used" by the seals). Litigants can challenge the "level of specificity" at which NMFS identifies particular features and the areas in which they appear, as Alaska did below. *See Jewell*, 815 F.3d at 555; *Alaska*, 2024 WL 4298114, at *11. But the district court correctly concluded that NMFS "adequately explained how it identified the areas where . . . essential features would be found," and Alaska does not challenge that determination on appeal. *Alaska*, 2024 WL 4298114, at *12.

What remains is Alaska's argument that the designations are larger than some in Congress may have contemplated. But we considered, and rejected, a similar argument in

*Jewell*. There, the Alaska Oil and Gas Association challenged a roughly 120-million-acre critical habitat designation for polar bears as "excessive" and contrary to the evidence before FWS. *Jewell*, 815 F.3d at 558–59. We explained, however, that the agency appropriately relied on evidence indicating that the polar bears "moved through large swaths" of territory, necessitating a designation of that size. *Id*. at 559. Just so here. Like the polar bears, the seal species "need room to roam." *Id*. NMFS explained in detail that the seal species rely on resources spread out over a wide area, including sea ice that is "dynamic" by nature. *E.g.*, 87 Fed. Reg. at 19186. The text of the ESA plainly permits NMFS to designate habitat on that basis. "When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest." *Bostock v. Clayton County*, 590 U.S. 644, 653 (2020).

**B. Foreign Nation Conservation Efforts and Foreign Habitat**

The Center next asserts that NMFS was not required to account for foreign nation conservation efforts or the existence of foreign habitat in making the designations here. Again, we agree with the Center.

The ESA is specific as to the "basis" for making critical habitat designations. 16 U.S.C. § 1533(b)(2). The agency must use "the best scientific data available" to identify the species' habitat and needs, and then it must "tak[e] into consideration" the "economic," "national security," and "any other relevant impact[s]" of designation. *Id*. Neither that provision, nor the critical habitat definition, so much as mentions consideration of foreign nation conservation efforts or foreign habitat. *Id*. §§ 1532(5)(A)(i), 1533(b)(2). And it is hard to understand how those considerations could

be an "impact" of a habitat designation. Accordingly, the ESA does not require consideration of those issues for purposes of critical habitat designations.

Our conclusion is reinforced by a neighboring provision: the statutory basis for making listing decisions. 16 U.S.C. § 1533(b)(1)(A). Unlike the provision governing the basis for critical habitat designations, the provision governing the basis for listing decisions expressly requires the agency to "tak[e] into account those efforts, if any, being made by any . . . foreign nation[] to protect such species," including "protection of habitat," when deciding whether to list a species as threatened or endangered. *Id*. Much like the contrast between the occupied and unoccupied critical habitat definitions discussed above, the contrast between these provisions is telling. "We cannot believe that Congress omitted" reference to foreign nation efforts in "the very next provision" "simply because it wanted to save ink." *City & County of San Francisco v. Env't Prot. Agency*, 604 U.S. 334, 344 (2025).

Alaska tries to find a way around the text, arguing that the seal species' global population and their habitat in foreign waters are "important aspect[s] of the problem" that NMFS arbitrarily failed to consider. But the important aspects of the problem "turn[] on what the relevant substantive statute makes important." *Nat'l Urb. League v. Ross*, 977 F.3d 770, 777 (9th Cir. 2020) (citation modified). As explained, there is strong evidence that Congress did not view foreign conservation efforts or foreign habitat as important considerations for purposes of designating critical habitat.

As the ESA requires, NMFS already considered foreign-efforts factors at the threatened-species-listing stage. NMFS

addressed foreign-nation conservation efforts, explaining that there was too much "uncertainty" about those efforts to rule out a threat to the seal species' existence. 77 Fed. at 76715–17, 76748. And the agency assessed the "distributions" of seal species "outside the jurisdiction of the United States." *Id*. at 76718–19, 76750; 87 Fed. at 19221 (cross-referencing these findings), 19279 (same). Alaska had a chance to contest NMFS's analysis of those factors during the listing stage. But the matter is now settled. *Alaska Oil & Gas Ass'n v. Pritzker*, 840 F.3d 671, 675 (9th Cir. 2016) (holding NMFS's decision to list the bearded seal was not arbitrary, capricious, or unlawful); *Alaska Oil & Gas Ass'n v. Ross,* 722 Fed. App'x 666, 668 (9th Cir. 2018) (same for ringed seal). Alaska is not due a second bite at the apple that Congress did not intend.

### C. Exclusions from Final Designations

Finally, the Center argues that NMFS acted within its discretion when it declined to consider excluding certain coastal areas for which Alaska and the North Slope Borough requested exclusions. On the Center's view, the ESA requires the agency to "tak[e] into consideration" the relevant impacts of its proposed designation, but "the ultimate decision whether to exclude areas from critical habitat is discretionary." The Center claims that NMFS met its statutory obligations here by exhaustively studying the relevant impacts of its proposed designations and by taking those impacts "into consideration" in promulgating its final rules. Once again, we agree that the agency's decision was consistent with the ESA.

The Center is correct that although the designation of critical habitat is generally mandatory, the exclusion of specific areas from those designations is a matter of agency

discretion. The ESA provides that NMFS must "tak[e] into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area as critical habitat," and that NMFS "*may* exclude any area" if "the benefits of such exclusion outweigh the benefits" of inclusion. 16 U.S.C. § 1533(b)(2) (emphasis added). That language imposes only one "categorical requirement": that the agency consider the relevant impacts of designation. *Weyerhaeuser*, 586 U.S. at 24 (quoting *Bennett*, 520 U.S. at 172). After considering those impacts, "the entire exclusionary process is discretionary." *Bldg. Indus. Ass'n of the Bay Area v. U.S. Dep't of Com.*, 792 F.3d 1027, 1033 (9th Cir. 2015); *accord Weyerhaeuser*, 586 U.S. at 24. In other words, the agency may decline to exclude any areas at all without conducting a cost-benefit analysis of every exclusion proposed in the notice and comment process. *Bldg. Indus. Ass'n*, 792 F.3d at 1033.

Because exclusion decisions are discretionary, our review is narrow. We may assess whether NMFS "consider[ed] all of the relevant factors" and provided a reasonable explanation for declining to consider Alaska's and the North Slope Borough's proposed exclusions of certain coastal areas. *Weyerhaeuser*, 586 U.S. at 25.

We conclude that NMFS cleared that low hurdle. NMFS prepared extensive Regulatory Impact Reviews for each seal species, examining the "economic, socioeconomic," and other costs associated with the final designations, *see* 87 Fed. Reg. at 19202 (bearded seal); *id.* at 19256 (ringed seal)—including the costs to commercial activity that Alaska and the North Slope Borough raised in their comments, *id.* at 19220, (addressing impact to economic activity on Alaska's North Slope); *id.* at 19278 (same). NMFS went on to find

that the economic impacts would be "small," with federal actors expected to bear "at least 42 percent" of the costs. *Id.* at 19285.

Alaska did not challenge those findings in the district court and does not meaningfully argue that NMFS failed to consider any relevant factors. Rather, Alaska essentially argues that NMFS's decision not to exclude those coastal areas was nonetheless unreasonable. In Alaska's view, NMFS pointed only to redundant regulatory benefits of designation, such as the requirement that federal agencies consult NMFS to ensure that their actions do not adversely affect critical habitat, 16 U.S.C. § 1536(a)(2), even though agencies must already consult NMFS to avoid "jeopardiz[ing] the continued existence of any endangered species or threatened species ," *id.*; 87 Fed. Reg. at 19195; *id.* at 19250.

NMFS's explanation for its benefits determination, however, falls well within the acceptable parameters. The agency reasonably concluded that although ESA consultation requirements are often "overlapping," federal agencies may still make "incremental" changes to conserve habitat "beyond any changes" necessary to preserve a listed species. 87 Fed. Reg. at 19192; *id.* at 19245. Even assuming that incremental benefits were not sufficient, NMFS pointed to several other benefits that reasonably support its decision. The list, set out fully in NMFS's Regulatory Impact Reviews, includes the informational benefit of the designations, which may cause agencies to further "support the conservation" of the seals by "mitigat[ing] adverse effects to critical habitat from the outset"; "enhanced public awareness"; and indirect benefits to "co-occurring species." *Id.* at 19193; *id.* at 19245. Alaska quibbles that some of these benefits are "speculative," but it makes no serious argument

that they run counter to the evidence before the agency. This is not a situation where NMFS failed to articulate "a satisfactory explanation" for the decision it reached. *Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019) (quoting *Motor Vehicle Mfrs. Assn. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

### D. Consideration of Prudency

On cross-appeal, Alaska argues that the designations must be set aside for the independent reason that the designations fail to comply with the ESA's "prudency" requirement. According to Alaska, NMFS "may only designate critical habitat 'to the maximum extent prudent,'" and here, NMFS failed to adequately explain why its designations were "prudent."[5] We reject Alaska's contention.

As Alaska observes, the ESA directs NMFS to designate critical habitat "to the maximum extent prudent" concurrently with its listing decision. 16 U.S.C. § 1533(a)(3)(A). But we have construed that language as creating a "narrow statutory exception" to what is otherwise an "obligation" to designate critical habitat. *Nat. Res. Def. Council v. U.S. Dep't of Interior*, 113 F.3d 1121, 1126–27 (9th Cir. 1997). As such, the exception applies only "under *rare* circumstances." *Id.* at 1126 (quoting *Enos v. Marsh*, 769 F.2d 1363, 1371 (9th Cir. 1985)). Our precedent and the applicable implementing regulations reveal that those circumstances are limited to situations where habitat designation would not be "beneficial to the species," such as

[5] Alaska also argued before the district court that NMFS "erred because it did not make a specific prudency determination" in the text of the final rules, *Alaska*, 2024 WL 4298114, at *13, but the State abandoned that argument on appeal.

when it would alert poachers to the species' location, or when habitat destruction is not a cause of the species' decline. *Id.* (quoting 50 C.F.R. § 424.12(a)(1)(i)–(ii) (1996)); *see generally* 50 C.F.R. § 424.12(a)(1)(i)–(iv) (providing that designation "may not be prudent" where designation would increase threats to the species or be of "no more than negligible" benefit). The "prudent" language is not, as Alaska would have it, a "broad exemption" that applies anytime a designation is contended to be "imperfect." *Nat. Res. Def. Council*, 113 F.3d at 1126.

Here, in response to public comments, NMFS adequately explained why the "not prudent" exception was inapplicable to the seals. In particular, NMFS emphasized that habitat destruction from "climate change, oil and gas activity, marine shipping and transportation, and commercial fisheries" is one of the primary threats to the seals' survival. 87 Fed. Reg. at 19221; *id.* at 19279. NMFS added that designation would not "increase the degree of threat" to the seals under any circumstances. 87 Fed. Reg. at 19221; *id.* at 19279. And NMFS correctly explained that the other concern Alaska raised—the existence of habitat outside the United States—did not have "any bearing on whether critical habitat should be designated." 87 Fed. Reg. at 19221; *id.* at 19279. We decline to read into this "rare exception" factors that Congress clearly did not intend to require the agency to consider. *See Nat. Res. Def. Council*, 113 F.3d at 1126.

## Conclusion

Because the district court's remand order resolved discrete legal issues; the court's conclusions, if erroneous, could result in a "wasted proceeding"; and the Center may not obtain a favorable result on remand, the order constitutes a final, appealable judgment as to the Center. On the merits,

Case: 24-7276, 03/25/2026, DktEntry: 82.1, Page 30 of 30



we reverse the district court's rulings that the designations are unlawful and affirm the district court's ruling as to the ESA's "prudent" requirement. We reinstate the critical habitat designation for each seal species and we remand with instructions to enter judgment in favor of the Center and NMFS.

The parties shall bear their own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**