Nos. 24-7276, 24-7377

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

STATE OF ALASKA,

*Plaintiff/Appellee/Cross-Appellant,*

v.

NATIONAL MARINE FISHERIES SERVICE,

*Defendant/Appellee,*

and

CENTER FOR BIOLOGICAL DIVERSITY,

*Intervenor-Defendant/Appellant/Cross-Appellee.*

On Appeal from the United States District Court for the District of Alaska
No. 3:23-cv-00032 (Hon. Sharon L. Gleason)

## CENTER FOR BIOLOGICAL DIVERSITY'S
## OPPOSITION TO PETITION FOR REHEARING EN BANC

Kristen Monsell
Emily Jeffers
Center for Biological Diversity
2100 Franklin St., Suite 375
Oakland, CA 94612
(510) 844-7100
kmonsell@biologicaldiversity.org
ejeffers@biologicaldiversity.org

Marlee Goska
Center for Biological Diversity
P.O. Box 1178
Homer, AK 99603
(907) 931-4775
mgoska@biologicaldiversity.org

*Attorneys for Intervenor-Defendant/Appellant/Cross-Appellee
Center for Biological Diversity*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................... ii

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................3

ARGUMENT ....................................................................................................7

    I.     NMFS's Designation of a Subset of Occupied Ice Seal Critical
          Habitat Is Consistent With the ESA and Precedent..............................8

    II.    The Panel Correctly Rejected Alaska's Argument that NMFS
          Must Find the Designated Areas Themselves Are Essential...............10

    III.   The Panel Properly Evaluated NMFS's Analysis of Impacts as
          Required by Section 4(b)(2) and *Weyerhaeuser* .................................13

    IV.   The Panel Correctly Held NMFS Need Not Consider Foreign
          Habitat or Foreign Conservation Efforts.............................................16

CONCLUSION ................................................................................................18

CERTIFICATE OF COMPLIANCE........................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Alaska Oil & Gas Ass'n v. Jewell*,
815 F.3d 544 (9th Cir. 2016) ...............................................................17

*Alaska Oil & Gas Ass'n v. Pritzker*,
840 F.3d 671 (9th Cir. 2016) .................................................................4

*Alaska Oil & Gas Ass'n v. Ross*,
722 Fed. App'x 666 (9th Cir. 2018) ......................................................4

*Anderson v. Knox*,
300 F.2d 296 (9th Cir. 1962) ......................................................... 9, 15

*Ariz. Cattle Growers' Ass'n v. Salazar*,
606 F.3d 1160 (9th Cir. 2010 ...............................................................11

*Bear Valley Mut. Water Co. v. Jewell*,
790 F.3d 977 (9th Cir. 2015) ...............................................................11

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
450 F.3d 930 (9th Cir. 2006) .................................................................4

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
67 F.4th 1027 (9th Cir. 2023) ......................................................... 2, 12

*Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*,
616 F.3d 983 (9th Cir. 2010) .................................................11, 17, 18

*United States v. Wylie*,
625 F.2d 1371 (9th Cir. 1980) ...............................................................7

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
586 U.S. 9 (2018) .................................................... 2, 9, 13, 14, 15

**Statutes**

16 U.S.C. § 1532(5)(A)......................................................................11

16 U.S.C. § 1532(5)(A)(i).......................................................1, 10, 11, 12

16 U.S.C. § 1532(5)(A)(ii).............................................................2, 11

16 U.S.C. § 1532(5)(C) ................................................................ 8, 10

16 U.S.C. § 1533(a)(3)......................................................................9

16 U.S.C. § 1533(a)(3)(A)(i) ............................................................4

16 U.S.C. § 1533(b)(1)(A) .............................................................17

16 U.S.C. § 1533(b)(2)................................................................ 9, 13

16 U.S.C. § 1533(b)(6)(C) .............................................................4

**Rules**

Fed. R. App. P. 40(a) ......................................................................7

Fed. R. App. P. 40(b)......................................................................1

Fed. R. App. P. 40(b)(2)(B)............................................................7

**Regulations**

50 C.F.R. § 424.02 .......................................................................11

**INTRODUCTION**

The panel ruling—a unanimous decision upholding the National Marine Fisheries Service's (NMFS) highly technical, statutorily required rules designating critical habitat for bearded and ringed seals under the Endangered Species Act (ESA)—does not warrant en banc review. The panel's record-based decision faithfully adheres to both Supreme Court and Ninth Circuit precedent and applies the plain meaning of the relevant statutory standards.

The panel correctly held that NMFS complied with the ESA by relying on the best available science to identify the "physical or biological features … essential to the conservation of" the seals, *see* 16 U.S.C. § 1532(5)(A)(i), and designating the specific areas that contain these features as critical habitat after preparing an extensive regulatory impact analysis and excluding certain areas from the designations. The panel also rightly recognized that, while the designations are large, their sizes reflect the scientific reality, "explained in detail" by NMFS, "that the seal species rely on resources spread out over a wide area, including sea ice that is 'dynamic' by nature." Op. 23 (citation omitted).

In arguing otherwise, the State of Alaska (Alaska) does not satisfy the stringent criteria for en banc review. *See* Fed. R. App. P. 40(b). Rather, the State misreads the ESA and the caselaw to manufacture "conflicts" where none exist. First, the panel's decision does not conflict with *Weyerhaeuser Co. v. U.S. Fish &*

1

*Wildlife Service*, 586 U.S. 9 (2018). *Weyerhaeuser* addressed whether an area constituted "habitat," and Alaska does not dispute that the areas at issue are in fact habitat of the seals. *Weyerhaeuser* did not impose any arbitrary limit on the size of critical habitat designations or otherwise create any additional requirements NMFS must meet before designating critical habitat. Moreover, contrary to Alaska's suggestion, NMFS described how each designation constitutes a subset of the seals' habitat.

Second, the panel's decision is consistent with *Center for Biological Diversity v. U.S. Fish & Wildlife Service*, 67 F.4th 1027 (9th Cir. 2023). As the panel explained, that case does not require NMFS, when designating *occupied* critical habitat, to determine that the designated areas themselves are essential for the conservation of the seals. That is the more demanding standard for designating *unoccupied* critical habitat, 16 U.S.C. § 1532(5)(A)(ii). *Center for Biological Diversity* and numerous other decisions of this Court recognize that, when designating occupied critical habitat, the agency need only determine the designated areas contain the features essential to the species' conservation, 67 F.4th at 1035, 1044–45, which is precisely what NMFS did here.

Third, nothing in the panel ruling conflicts with the holding in *Weyerhaeuser* that NMFS's decisions whether to exclude areas from a designation are judicially reviewable. 586 U.S. at 24–26. The panel applied *Weyerhaeuser* to conclude

2

NMFS did everything the ESA requires of it: NMFS (1) prepared an extensive analysis of the economic and other impacts of the critical habitat designations and (2) reasonably explained its exercise of discretion not to exclude additional areas from the designation based on that analysis. Op. 26–28.

Fourth, the panel's holding that NMFS need not consider foreign conservation efforts or foreign habitat in designating critical habitat does not conflict with any precedent. Rather, this ruling is consistent with fundamental principles of statutory interpretation demonstrating that if Congress had intended the agency to consider such factors in designating critical habitat, it would have said as much. It did not, and the panel correctly treated that omission as intentional.

There are no actual conflicts with Supreme Court or Circuit precedents, and the petition contains no argument that the issues are otherwise of exceptional importance. That Alaska simply disagrees with the panel is not a basis for en banc review. The Court should deny the petition.

## BACKGROUND

In 2008, the Center for Biological Diversity (Center) petitioned NMFS to list bearded and ringed seals under the ESA based on the threat of sea ice loss from climate change. 4-FedER-397 (bearded seal); 4-FedER-427 (ringed seal). NMFS listed both species as threatened in 2012. 4-FedER-397–425, 427–59. In doing so, NMFS explained how sea ice is the only surface on which these seals breed, give

3

birth, nurse pups, and haul out to complete their annual molt. 4-FedER-399–400, 430–31. NMFS further explained how the best available science demonstrates sea ice is rapidly declining and will continue to do so through at least the end of the century, and that such significant habitat losses will likely cause the extirpation of the seals from most of the places they live, threatening them with extinction within the foreseeable future. *See, e.g.*, 4-FedER-400–01, 419, 429.

Alaska challenged both listings, claiming that, *inter alia*, NMFS's decisions were not based on the best available science, the seals' populations were plentiful, and the climate science was too uncertain to support the listings. *See Alaska Oil & Gas Ass'n v. Pritzker*, 840 F.3d 671, 674–75 (9th Cir. 2016) (bearded seal); *Alaska Oil & Gas Ass'n v. Ross*, 722 Fed. App'x 666, 668 (9th Cir. 2018) (ringed seal). This Court upheld the listings. *See Pritzker*, 840 F.3d at 675–86; *Ross*, 722 Fed. App'x at 668–69.

The listings meant NMFS also had to designate critical habitat. *See* 16 U.S.C. § 1533(a)(3)(A)(i), (b)(6)(C); *see also Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 935 (9th Cir. 2006) ("[C]ritical habitat designations are mandatory."). NMFS issued critical habitat designations for the seals in 2022. *See* 2-FedER-025 (bearded seal); 2-FedER-076 (ringed seal). Both designations consist of U.S. habitat occupied by the ice seals; neither includes unoccupied habitat. 2-FedER-036, 088.

4

In issuing the designations, NMFS detailed the costs and benefits of the designations in comprehensive Impact Analysis Reports. *See, e.g.*, 2-FedER-047–48, 100–101. NMFS also explained how it examined "the best scientific information available regarding the natural history of [bearded and ringed seals] and the habitat features that are essential to support the species' life-history needs," and identified three "physical and biological features … essential to the [seals'] conservation … within U.S. waters occupied by the species." 2-FedER-029–31, 080–83. Those three features are: (1) sea ice habitat suitable for whelping and nursing (and, for ringed seals, sea ice with enough snow cover to form and maintain subnivean birth lairs); (2) sea ice habitat suitable as a platform for molting; and (3) the presence of primary prey resources. 2-FedER-029–31, 080–83.

NMFS also described how "[t]he seasonality of ice cover strongly influences Arctic ringed seal movements, foraging, reproductive behavior, and vulnerability to predation," 2-FedER-077, and "[b]earded seal movements and habitat use are strongly influenced by the seasonality of sea ice," with "many seals migrat[ing] seasonally to maintain access to [drifting sea] ice," 2-FedER-031. Individual seals can therefore have extensive ranges, with studies showing some seals migrating an average of 4,790 kilometers. 2-FedER-077.

NMFS further explained the designations were as specific as the best available science allows given the "dynamic" and "variable" nature of the sea ice essential features "on both spatial and temporal scales." 2-FedER-031, 083. And the agency described how it included only "a subset" of areas occupied by the species in U.S. waters. 2-FedER-050–51, 105. Both designations exclude, for example, large areas of the seals' habitat in the Beaufort Sea. *See* 2-FedER-075, 131.

Alaska challenged the designations, and the Center intervened as a defendant. *See* 1-FedER-003. As relevant here, the district court held NMFS's critical habitat designations unlawful for not (1) explaining "why the entirety of the designated areas … are indispensable to the seals' survival and recovery"; (2) considering foreign conservation efforts; and (3) considering whether to exclude additional areas from the critical habitat designations. 1-FedER-010–12. Both the Center and NMFS appealed. NMFS filed an opening brief supporting the critical habitat designations and explaining why the district court erred in holding them unlawful. NMFS then dropped its appeal after the change in administration.

A unanimous panel reversed the district court. Relying on the ESA's plain language and this Court's precedent, the panel held that NMFS is not required "to find that the entire designated area is itself 'essential' to the species" when designating occupied critical habitat, as that is the standard that applies to

6

designating unoccupied critical habitat. Op. 19–23. In doing so, the panel evaluated both *Weyerhaeuser* and *Center for Biological Diversity*, rightly recognizing that neither case even addresses, let alone imposes, the standard Alaska desires. *Id.* at 21–22. The panel also held that requiring NMFS to consider foreign conservation efforts and habitat before designating critical habitat would run afoul of the ESA's plain meaning, which only requires the agency to consider such efforts when deciding whether to list a species. *Id.* at 23–25. Additionally, relying on *Weyerhaeuser*, the panel held NMFS did all it was required to do in deciding not to exclude from the designation the areas Alaska and others wanted excluded. *Id.* at 25–28.

## ARGUMENT

"[R]ehearing en banc is not favored." Fed. R. App. P. 40(a); *see also United States v. Wylie*, 625 F.2d 1371, 1378 n.10 (9th Cir. 1980) ("[E]n banc hearings are disfavored." (citation omitted)). Consequently, petitions for en banc review are rarely granted, and only if "there is (1) an intracircuit conflict[;] … (2) a question of exceptional importance" that needs resolution, *Wylie*, 625 F.2d at 1378 n.10 (citation omitted); or (3) a conflict with Supreme Court precedent, Fed. R. App. P. 40(b)(2)(B).

None of these factors are present here. The panel's decision does not conflict with any Supreme Court or Ninth Circuit precedent. Nor does this case raise a

7

question of exceptional importance, and Alaska does not present any argument otherwise. Instead, it (erroneously) asserts in passing that because the panel's decision is inconsistent with relevant precedent, the decision removes limitations to critical habitat designations. But the panel's decision is consistent with precedent. The panel properly interpreted NMFS's obligations using normal statutory construction principles. And nothing in its decision changes the fact that critical habitat designations will continue to be made on a species-by-species basis, considering the relevant statutory standards, the best available science on the species' life history, and the economic and other impacts of the designation.

## I.    NMFS's Designation of a Subset of Occupied Ice Seal Critical Habitat Is Consistent With the ESA and Precedent

The panel correctly recognized the designations are a subset of the seals' habitat and comply with the sole geographic limitation in the ESA: that NMFS not designate "the entire geographical area[s] which can be occupied by the [seals]." Op. 22 (quoting 16 U.S.C. § 1532(5)(C)) (emphasis omitted). Alaska's argument that this decision conflicts with *Weyerhaeuser*, Pet. 5–8, is wrong.

As an initial matter, Alaska newly claims that the ESA required NMFS to demonstrate how the designations constitute only a subset of the seals' habitat, arguing it was therefore improper for the panel to take the agency's word that they do. Pet. 7–8. But Alaska did not previously make this subset argument and cannot now use it as a reason to seek en banc review. *See Anderson v. Knox*, 300 F.2d 296,

8

297 (9th Cir. 1962) (a party may not "study and reargue his case anew" in a rehearing petition).

Regardless, NMFS explained that the designated critical habitats include a subset of the habitat occupied by the seals. *See, e.g.*, 2-FedER-028, 032–34, 074, 078–79, 084–85, 102–03, 130 (explaining the designations exclude occupied waters south of the southern boundary, do not include the shoreward extent of occupied waters, exclude areas with existing infrastructure, and exclude large areas in the northern portion of the seals' range). Indeed, Alaska admits the ringed seal designation excludes 30 million acres of occupied habitat. Pet. 4.

Alaska's demand for a more specific explanation from NMFS appears nowhere in the ESA, *see* 16 U.S.C. § 1533(a)(3), (b)(2), and Alaska cites nothing in support of its argument other than its misreading of *Weyerhaeuser*. The relevant portion of *Weyerhaeuser* dealt with the meaning of "habitat" within the phrase "critical habitat," and, specifically, whether "habitat" could include an unoccupied area that "would require some degree of modification to" be habitable by a given species. 586 U.S. at 19–21 ("The [critical habitat] definition allows [NMFS] to identify the subset of habitat that is critical, but leaves the larger category of habitat undefined."). *Weyerhaeuser* did not impose new requirements on NMFS to show "that the designation of critical habitat is not a near perfect match to all of a species

9

habitat." *Contra* Pet. 7; *see also* Op. 21 (*Weyerhaeuser* does not require NMFS to "find something other than what the ESA calls for expressly.").

There is no conflict with precedent and, because NMFS did not designate "the entire geographical area[s] which can be occupied by the [seals]," Op. 22 (quoting 16 U.S.C. § 1532(5)(C) (emphasis omitted)), the panel correctly upheld the designations.

## II. The Panel Correctly Rejected Alaska's Argument that NMFS Must Find the Designated Areas Themselves Are Essential

The panel correctly recognized that when designating occupied critical habitat, the agency need only determine whether the designated areas contain the features essential to the species' conservation. Op. 19; 16 U.S.C. § 1532(5)(A)(i). The panel broke no new ground in reaching this determination but instead examined the ESA's plain language to give meaning to the different statutory standards that apply when designating occupied versus unoccupied critical habitat. *See* Op. 19–22.

The ESA is clear: when NMFS is designating occupied critical habitat, the area must contain "physical or biological features[1] (I) essential to the conservation of the species and (II) which may require special management considerations or

---

[1] In quoting the ESA's requirements for designations of occupied critical habitat, Alaska omits the key phrase "physical or biological features." *Compare* Pet. 5, *with* 16 U.S.C. § 1532(5)(A)(i).

protection." 16 U.S.C. § 1532(5)(A)(i); *see also* 50 C.F.R. § 424.02 (defining "physical or biological features" as "features that occur in specific areas and that are essential to support the life-history needs of the species"). In contrast, when designating unoccupied critical habitat, NMFS must determine that the areas themselves (rather than just their physical or biological features) "are essential for the conservation of the species." 16 U.S.C. § 1532(5)(A)(ii).

Consistent with this plain language, this Court has repeatedly recognized these two separate statutory standards must be given different meaning and that designations of unoccupied critical habitat are more onerous, requiring the agency "to demonstrate that unoccupied area is 'essential' for conservation before designating it as critical habitat." *Bear Valley Mut. Water Co. v. Jewell*, 790 F.3d 977, 994 (9th Cir. 2015); *see also Ariz. Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160, 1163 (9th Cir. 2010) (similar). In contrast, "all that ESA § 3(5)(A) requires before the designation of occupied critical habitat is a determination of what physical or biological features are essential to the conservation of the species." *Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*, 616 F.3d 983, 989 (9th Cir. 2010) (citing 16 U.S.C. § 1532(5)(A)).

Alaska's repeated insistence that the area itself, rather than the physical or biological features, must be "essential" to the species, Pet. 5–6, 8–10, contravenes

11

the ESA's plain meaning and this precedent. The panel rightly rejected Alaska's arguments.

The panel's decision is consistent with *Center for Biological Diversity*. *Contra* Pet. 8–10. There, this Court considered the definition of the word "essential," but it did so in the context of an unoccupied critical habitat designation. 67 F.4th at 1035–38. It concluded that, for such designations, the ESA requires a finding that the designated area itself is essential to the species' conservation, with essential meaning "indispensable or necessary to [the species'] conservation, not merely beneficial." *Id*. at 1038.

Far from ignoring this decision, *contra* Pet. 9, the panel correctly found that it did not address "what 'essential' modifies in [the] context" of occupied critical habitat designations. Op. 21 (citing *Ctr. for Biological Diversity*, 67 F.4th at 1036–37). As the panel recognized, in the definition of occupied critical habitat "[t]he adjective 'essential' modifies 'physical or biological features' that the 'specific areas' *contain*; it does not modify the 'specific areas' themselves." *Id*. at 20 (citing 16 U.S.C. § 1532(5)(A)(i)). Accordingly, the panel rightly held NMFS met the ESA's requirements when it showed in its designations that bearded and ringed seals cannot perform their essential life functions in areas without adequate sea ice and prey, and that they use the designated areas for the precise purposes for which they were designated: whelping and nursing pups, molting, and as a platform from

12

which to hunt. *See* Op. 8. In other words, NMFS's designation explained that the designated areas contain the physical or biological features that are essential, i.e., indispensable, to the seals' conservation, which is entirely consistent with the ESA's plain language and the definition of essential discussed in *Center for Biological Diversity*. Op. 21–22.

## III. The Panel Properly Evaluated NMFS's Analysis of Impacts as Required by Section 4(b)(2) and *Weyerhaeuser*

The panel's holding that NMFS must only consider relevant impacts of a critical habitat designation and need not perform a cost-benefit analysis for every area proposed for exclusion is fully consistent with *Weyerhaeuser*.

Section 4(b)(2) of the ESA states:

> [NMFS] shall designate critical habitat … after taking into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area as critical habitat. [NMFS] may exclude any area from critical habitat if [it] determines that the benefits of such exclusion outweigh the benefits of specifying such area … unless [it] determines … that the failure to designate such area as critical habitat will result in the extinction of the species concerned.

16 U.S.C. § 1533(b)(2). The Supreme Court has clarified that Section 4(b)(2) imposes a "unified process" for weighing the impact of designating an area as critical habitat. *Weyerhaeuser*, 586 U.S. at 24. The first sentence of Section 4(b)(2) "imposes a categorical requirement that [NMFS] take into consideration economic and other impacts before such a designation." *Id.* (citation modified). The second

13

sentence allows NMFS to choose to "exclude an area from critical habitat if [the agency] determines that the benefits of exclusion outweigh the benefits of designation." *Id.*

Here, the panel found that NMFS complied with these instructions. Specifically, the panel recognized that NMFS properly considered "the relevant impacts of designation," evaluating both the "'economic, socioeconomic,' and other costs associated with the final designations" and the benefits of the designations. Op. 26–27 (citations omitted). NMFS determined that it would not pursue an exclusion analysis for the areas requested by Alaska and the North Slope Borough due to the low economic impacts of the designations. 2-FedER-064–65, 121–122. In upholding this determination, the panel recognized its role was to assess whether NMFS "'consider[ed] all of the relevant factors' and provided a reasonable explanation for declining to consider Alaska's and the North Slope Borough's proposed exclusions of certain coastal areas," and it found NMFS had done so. Op. 26–28 (quoting *Weyerhaeuser*, 586 U.S. at 25) (alteration in original).

Nothing about this decision conflicts with *Weyerhaeuser*. *Contra* Pet. 10–11. The relevant portion of that case merely examined "whether a federal court may review an agency decision not to exclude a certain area from critical habitat because of the economic impact of such a designation," and it held that such decisions are reviewable. *Weyerhaeuser*, 586 U.S. at 19, 23–25. It did not create a

14

new rule requiring a cost-benefit analysis of every area a commenter wants excluded from the designation, as Alaska wrongly suggests.

In stating that the ESA requires an agency to "consider economic impact and relative benefits before deciding whether to exclude an area from critical habitat or to proceed with designation," the Supreme Court was explaining that an agency's evaluation of economic impacts under Section 4(b)(2) is not without standards, such that a court can review it for an abuse of discretion. *Weyerhaeuser*, 586 U.S. at 25. Here, the panel properly applied *Weyerhaeuser* and examined whether NMFS "consider[ed] the economic and other impacts of designation when making [its] exclusion decisions." *Id*. at 25; Op. 26–28.

Finally, Alaska alleges—for the first time—that NMFS's economic analysis never considered the "buffer zone's relative benefit to Alaska Native communities." Pet. 12. Because Alaska did not previously make this argument, Alaska has waived it and the Court should not consider it now. *See Anderson*, 300 F.2d at 297. In any event, as discussed above, the panel correctly held that NMFS provided an adequate explanation for the overall designation. Op. 26–28; *see Weyerhaeuser*, 586 U.S. at 25 (agency must only "consider the economic and other impacts of designation").[2] Alaska's complaint that the panel should have required

---

[2] Contrary to Alaska's assertions, NMFS "solicit[ed] input from the Ice Seal Committee" and "offer[ed] to consult with Alaska Native tribes and organizations regarding the development of the designation." 2-FedER-046, 125. NMFS also

even more of an explanation finds no support in the ESA or the caselaw and does not present any issue warranting en banc review.

## IV. The Panel Correctly Held NMFS Need Not Consider Foreign Habitat or Foreign Conservation Efforts

The panel's holding that the ESA did not require NMFS to consider foreign conservation efforts or foreign habitat in issuing the designations is fully consistent with the ESA's plain language and caselaw. Once again, Alaska's claim that this decision conflicts with *Weyerhaeuser* and *Center for Biological Diversity* reflects its mistaken attempt to conflate NMFS's obligations when designating occupied critical habitat with the more onerous standard NMFS must meet when designating unoccupied critical habitat. *Supra* Argument, Sec. II.

The panel began with Section 4(b)(2)'s text, noting that it is "specific as to the 'basis' for making critical habitat designations" and that neither this provision, nor the definition of critical habitat, mentions foreign conservation efforts or habitat. Op. 23 (citations omitted). The panel then concluded that NMFS's mandate to consider the "impacts" of critical habitat designations cannot reasonably be read to include these terms, *id.* at 23–24 (citation omitted), a ruling consistent with this Court's decision in *Home Builders* that "the plain language of ESA directs the

---

explained how "no restrictions on subsistence hunting are associated with the … designation[s]." 2-FedER-072, 129.

16

agency to consider only those impacts caused by the critical habitat designation itself," 616 F.3d at 992 (citation omitted).

The panel also looked at "a neighboring provision" of the ESA articulating the factors NMFS must consider when evaluating whether to list a species. Op. 24 (discussing 16 U.S.C. § 1533(b)(1)(A)). That provision expressly requires NMFS to consider "those efforts, if any, being made by any foreign nation to protect such species, including protection of habitat." *Id.* (citation modified). The panel determined that because these considerations are required for listing determinations, but absent from the requirements for designating critical habitat, it must treat the omission as intentional. *Id.* This holding is consistent with Supreme Court precedent regarding how courts must interpret statutes, along with a wealth of Ninth Circuit caselaw holding that courts cannot read requirements into the ESA that do not exist. *See, e.g.*, *Alaska Oil & Gas Ass'n v. Jewell*, 815 F.3d 544, 555 (9th Cir. 2016) (overturning district court where its ruling "held [the agency] to a standard of specificity that the ESA does not require").

Nor does the ESA's goal of recovery mean that NMFS must consider foreign conservation efforts in designating critical habitat. *Contra* Pet. 14–15. Indeed, Alaska's insistence that designating critical habitat requires NMFS to also "consider[] when ESA protection for the seals will no longer be necessary," Pet. 14–15 (citation modified), is directly at odds with this caselaw. *See Home Builders*,

616 F.3d at 989–90 (rejecting the argument the agency must first identify when conservation will be achieved before designating critical habitat). Whether NMFS failed to consider an important aspect of the problem, "turn[s] on what the relevant substantive statute makes important." Op. 24 (citation omitted). Congress made foreign conservation efforts and habitat an important factor when NMFS is deciding whether to list (or delist) a species, but not for critical habitat designations.

As the panel explained, NMFS already considered these issues when listing the seals, Alaska had the chance to contest the agency's consideration of those factors in its prior lawsuits challenging the listings, and Alaska cannot use its challenge to the critical habitat designations to have "a second bite at the apple that Congress did not intend." Op. 25.

## CONCLUSION

The Court should deny the petition.

Respectfully submitted on July 27, 2026,

/s/ Emily Jeffers
Emily Jeffers
Kristen Monsell
Center for Biological Diversity
2100 Franklin St., Suite 375
Oakland, CA 94612
(510) 844-7100
kmonsell@biologicaldiversity.org
ejeffers@biologicaldiversity.org

18

/s/ *Marlee Goska*
Marlee Goska
Center for Biological Diversity
P.O. Box 1178
Homer, AK 99603
(907) 931-4775
mgoska@biologicaldiversity.org

*Attorneys for Intervenor-*
*Defendant/Appellant/Cross-Appellee*
*Center for Biological Diversity*

19

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Federal Rules of Appellate Procedure 27(d) and 32(a)(5) and (6) because it has been prepared in 14-point Time New Roman, a proportionally spaced font.

I further certify that this motion complies with the type-volume limitation of Circuit Rule 40-1(a) and this Court's Order of June 4, 2026, Dkt. No. 86.1, because it contains 4,064 words, excluding the parts of the brief exempted under Federal Rule of Appellate Procedure 32(f).


Dated: July 27, 2026                          /s/ Emily Jeffers
                                              Emily Jeffers